# In the United States Court of Federal Claims

| | |
|---|---|
| REGINALD NATHANIEL MALLARD, | |
| Plaintiff, | |
| v. | No. 23-cv-1504 |
| THE UNITED STATES, | Filed: November 17, 2023 |
| Defendant. | |

*Reginald Nathaniel Mallard*, Los Angeles, California, Plaintiff, appearing *pro se*.

*Matthew Jude Carhart*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., appearing for Defendant.

## MEMORANDUM AND ORDER

Plaintiff Reginald Nathaniel Mallard, appearing *pro se*, seeks monetary reparations to remedy the harmful legacy of slavery on African Americans, pursuant to the final report published by the California Task Force to Study and Develop Reparation Proposals for African Americans (Task Force).[1] Pending before the Court is Defendant United States' Motion to Dismiss Plaintiff's Complaint (ECF No. 12) (Def. Mot.).[2] Defendant contends that Plaintiff's claim must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED**.

---

[1] *See generally* CAL. TASK FORCE TO STUDY AND DEVELOP REPARATION PROPOSALS FOR AFRICAN AMERICANS, FINAL REPORT (2023).

[2] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

## BACKGROUND

On June 29, 2023, the Task Force released its final report, including recommendations for monetary reparations to combat the harmful legacy of slavery on African Americans residing in California.  Press Release, Office of the Attorney General, *California Reparations Task Force Unveils Comprehensive Final Proposals to the Legislature Regarding Reparations for African Americans* (June 29, 2023), https://oag.ca.gov/news/press-releases/california-reparations-task-force-unveils-comprehensive-final-proposals.  To date, the California state legislature has not, however, enacted any legislation to implement the monetary reparations recommended by the Task Force.  *AB 3121: Task Force to Study and Develop Reparation Proposals for African Americans*, OFF. ATT'Y GEN., https://www.oag.ca.gov/ab3121 (last visited Nov. 7, 2023) ("We are aware of recent reports of electronic communications and social media posts sharing false and misleading information about African American California residents receiving monetary reparations. This information is false. There is no such process in place with the Department of Justice or any other state agency. Under AB 3121, any reparations program will need to be enacted by the Legislature and approved by the Governor . . . .  Therefore, at this time, there is no claims process.").

On August 28, 2023, Plaintiff, a resident of California, filed his Complaint seeking monetary reparations.  Plaintiff alleges he is a "disenfranchised decendant [sic] of enslaved peoples" and also claims to have applied "for both the California Reparations Program and the International Reparations Program ICC on application forms that have been uploaded on the California reparations website."  Complaint (ECF No. 1) (Compl.) at 2.  Plaintiff notes that he has not received any compensation and expresses concern that the California state legislature intends to exclude cash payments from any future reparations legislation.  *Id.*  Plaintiff requests that this Court: (1) issue an injunction preventing the state of California "from giving anyone [his]

2

reparations payments" and (2) issue an order for the Treasury[3] to pay $362 million, with interest and punitive damages. *Id.* at 3. Plaintiff also alleges that his "reparations file," application, birth certificate, and unspecified federal claims files were stolen. *Id.* at 2. Plaintiff claims that his Complaint "preserves [his] right of monetary claim in both the California goverment [sic] claims and the ICC applications uploaded to the California Reparations Program website." *Id.* Plaintiff simultaneously filed a Motion for Leave to Proceed *in forma pauperis*, which this Court granted on October 2, 2023. *See* Plaintiff's Motion for Leave to Proceed *in forma pauperis* (ECF No. 2); Order (ECF No. 9).

On October 17, 2023, Plaintiff filed a Notice of Appeal. Plaintiff's Notice of Appeal (ECF No. 11) (Not. App.). Plaintiff's Notice of Appeal claims to be appealing an unspecified order entered by the Court on October 11, 2023.[4] *Id.* at 1. The Notice proceeds to list the following 11 "Points of Appeal":

> 1. Failure to Assign Counsel Rule 44
> 2. Ex Parte Communication Letter to the Court (Evidence) of Expendetures [sic] and Accounts and Real Estate
> 3. Failure to Approve Temporary Housing to be Paid for with My Own Money
> 4. Evidence Tampering, Bank Account Tampering, Tampering with Communication Devices
> 5. Harrassment [sic] of Real Estate Agents and Attorneys
> 6. Reduction of Demand to $1,000,000 Cause 28:1491 Tucker Act
> 7. This Case Is Based on Computations in Assembly Bill AB-3121, Reparations Task Force Recommendations (California) and the Returning of Bruce's Beach (California) and the Executive Order by General Sherman.
> 8. Mailing Address Tampering, Residential Address Tampering Residence in Filing
> 9. Leslie Buckner Sister [Phone Number]
> 10. Silvia Shoukry Chase Bank Is Contact [Phone Number]
> 11. Objection to Extension of Time by the Government over 60 Days.

---

[3] It is unclear whether "the Treasury" referenced by Plaintiff is the United States Treasury or the California State Treasurer's Office.

[4] As explained below, the Court did not enter any orders pertaining to this action on October 11, 2023. *Infra* Section II.

*Id.* at 2–3.

On October 17, 2023, Defendant timely moved to dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims. Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's claim because Plaintiff has failed to identify a money-mandating source of law. Def. Mot. at 5. Further, Defendant contends that Plaintiff's Notice of Appeal does not divest this Court of jurisdiction to hear its Motion to Dismiss given that the appeal is plainly deficient. *Id.* at 5 n.3.

## **APPLICABLE LEGAL STANDARD**

The Tucker Act, 28 U.S.C. § 1491, provides this Court with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, . . . or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act serves as a waiver of sovereign immunity for "certain claims for monetary relief against the United States" but does not create a right to relief itself. *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *see United States v. Mitchell*, 463 U.S. 206, 212, 218 (1983). Instead, to establish a right of relief under the Tucker Act, a "substantive right must be found in some other source of law." *Mitchell*, 463 U.S. at 216; *see Todd v. United States*, 386 F.3d 1091, 1093–94 (Fed. Cir. 2004) (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)). The constitutional, statutory, or regulatory provision must be "fairly . . . interpreted as mandating compensation by the Federal Government for the damage sustained." *Testan*, 424 U.S. at 400 (internal quotations omitted) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967)). Additionally, this Court's jurisdiction only extends to suits against the United States; as such, any suits against non-federal entities fall squarely outside of this Court's jurisdiction. *See United States v. Sherwood*, 312 U.S. 584, 588

(1941) (discussing how the Court's jurisdiction does not provide for relief "against others than the United States").

This Court must dismiss claims outside its subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3). In deciding a motion to dismiss for lack of subject matter jurisdiction, this Court accepts all uncontroverted facts as true and construes the facts in the light most favorable to the non-moving party. *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014); *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002). A *pro se* litigant's submissions are held to "less stringent standards than [those] drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). This does not, however, excuse Plaintiff's burden to establish the Court's jurisdiction by a preponderance of the evidence. *See Landreth v. United States*, 797 F. App'x 521, 523 (Fed. Cir. 2020) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)); *Curry v. United States*, 787 F. App'x 720, 722 (Fed. Cir. 2019).

## DISCUSSION

### I. This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Reparations Claim

As noted, Plaintiff's Complaint relies primarily on the Task Force's recommendations and actions that California may take in the future. Compl. at 1–3. As such, Plaintiff's request for an injunction targets the state of California, rather than the United States. This Court's subject matter jurisdiction, however, is limited to suits against the United States, and this Court is not empowered to adjudicate cases seeking redress from non-federal entities, such as state institutions. *See Sherwood*, 312 U.S. at 588 (The Court's "jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States, and . . . relief sought [against parties other than the] United States . . . must be ignored as beyond the jurisdiction of the court." (internal citations omitted)). Plaintiff's claim for redress from California must therefore be

dismissed for lack of jurisdiction. *See id*; *Curry*, 787 F. App'x at 722–23 (citing *Trevino v. United States*, 557 F. App'x 995, 998 (Fed. Cir. 2014)).

To the extent that Plaintiff's request for damages from "the Treasury" can be construed as a claim against the United States, Plaintiff does not cite any constitutional, statutory, or regulatory provision that confers jurisdiction upon this Court. Instead, the Complaint references the potential for future legislation that the California state legislature *may* enact. Compl. at 2–3. But as Plaintiff acknowledges, no such law presently exists. *See id.* at 2 ("[T]he California legislature is now reviewing the report and intends to draft bills from it to be sent back to the governor . . . ."). Moreover, even if the Task Force's recommendations were enacted into legislation by the state of California, this Court's jurisdiction does not encompass claims grounded in state law. *Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir. 2007) (citing *Mitchell*, 463 U.S. at 215–18). Plaintiff's Notice of Appeal makes fleeting reference to "the Executive Order by General Sherman" but does not elaborate.[5] Not. App. at 3. Assuming that Plaintiff sought to cite to General William Sherman's Special Field Orders No. 15, which attempted to redistribute confiscated land in the Southern United States to former slaves during the Civil War, such field orders still fail to confer jurisdiction upon this Court. *See* Not. App. at 3; Barton Myers, *Sherman's Field Order No. 15*, NEW GA. ENCYC. (Sept. 25, 2005), https://www.georgiaencyclopedia.org/articles/history-archaeology/shermans-field-order-no-15/#:~:text=William%20T.,-Sherman&text=Sherman%20issued%20Field%20Order%20No,to%20the%20original%20white%20owners. Subsequently revoked, Sherman's Field Orders do not embody a constitutional, statutory, or regulatory right, nor do they mandate damages to be paid by the United States. *See* Myers, *supra* (explaining how President Johnson revoked the orders in 1865). In an appended

---

[5] The Notice of Appeal is the first time that "the Executive Order by General Sherman" is mentioned.

6

conclusion to his Complaint, Plaintiff further references his right to "life, liberty, and the pursuit of happiness" as enshrined in the Declaration of Independence. Compl. at 5. However, the Declaration of Independence likewise fails to serve as an independent, money-mandating source of law capable of conferring jurisdiction upon this Court.

II. **Plaintiff's Notice of Appeal Does Not Divest This Court of Jurisdiction to Decide Defendant's Motion to Dismiss**

Plaintiff's Notice of Appeal purportedly appeals an unspecified order entered by the Court on October 11, 2023. Not. App. at 1. No such order, however, was entered by this Court on that date. In fact, Plaintiff does not reference any appealable orders in his Notice. Alternatively, even contemplating Plaintiff's stated reasons for appeal, Plaintiff does not assert any cognizable legal or procedural errors made by this Court. Although a notice of appeal will typically divest a trial court of jurisdiction over issues related to the appeal, a deficient notice of appeal permits the trial court to proceed with the case. *See Gilda Indus. Inc. v. United States*, 511 F.3d 1348, 1350–51 (Fed. Cir. 2008) (internal citations omitted) (quoting *Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (en banc)) ("Where the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, or reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction."). Because Plaintiff's Notice of Appeal does not cite an appealable order nor assert any cognizable errors of law or procedure in this action, the Court retains its ability to issue this Memorandum and Order ruling on Defendant's Motion to Dismiss. *See id.*

## **CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 12) is **GRANTED** pursuant to Rule (12)(b)(1), and Plaintiff's Complaint (ECF No. 1) is **DISMISSED** without leave to replead.  The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

November 17, 2023
Washington, D.C.